Walter T. LaCross
vs.          Divorce No. 26889.
Jewel M. LaCross

October 25, 1932.

CHURCHILL, J. This is a petition for divorce heard on the merits. The charge relied on at the hearing was extreme cruelty.

The parties were married at San Diego, California, on October 4, 1926. At that time the petitioner was serving as an enlisted man in the Navy

of the United States and was 20 years of age. The respondent was somewhat older and had been twice married. After living at San Diego for a short time, the petitioner was discharged from the Navy and the parties came to Rhode Island some time in 1927, where they have both resided continuously up to the present time. Three children were born of the marriage, two of whom are now living.

Some time in December, 1930, the petitioner developed epilepsy, the manifestations of which have continued to the present time, rendering the petitioner unable to earn a livelihood.

In November, 1931, it was discovered that the respondent was suffering from syphilis. The parties did not separate but lived in the same residences until May 11, 1932, when, after a scene of violence, the petitioner left the respondent and began divorce proceedings.

The first point urged on behalf of the respondent is that she contracted syphilis from the petitioner and hence he cannot maintain his petition.

Dr. Taggart examined respondent in November, 1931, and found her suffering from syphilis in an acute stage. In August of the same year he was consulted by the petitioner. He found him suffering from a sore on his breast and entertained suspicions as to its cause. He saw him two or three times thereafter, gave him local treatment but did not make any positive test and did not see the petitioner again after the third visit. His diagnosis of syphilis was not positive. He frankly termed it a suspicion.

The petitioner testified that the sore on his breast was cured by the application of simple household remedies. Dr. Wilcox examined the petitioner in the late fall of 1931 and early in 1932. On each occasion he applied a blood test and in each case the result was negative. Some attempt was made by the respondent to show that the blood test was not sufficient and that a test of the spinal fluid is always necessary to enable a positive diagnosis to be made one way or the other.

On the weight of the evidence, and taking into consideration the doubtful diagnosis of Dr. Taggart, the Court finds that the petitioner was not suffering from syphilis up to the time he left his wife, May 11, 1932.

The next point urged by the respondent is that the petitioner's conduct with one Celia Rose bars him from relief.

The respondent complained frequently of the petitioner's relations with other women, but the only evidence submitted on this point at the trial concerned his relations with one Celia Rose.

The petitioner worked in his father's factory in East Greenwich, where he had charge of the shipping department. Celia Rose was employed on the second floor of the mill. The duties of the petitioner took him to the second floor and while there he engaged in more or less conversation with Celia. He also took her in his automobile from the factory to the business district of East Greenwich, and on one occasion took her in his car to the vicinity of his residence in Eden Park. His wife discovered her presence in the car, brought her into the house and reproached her for her conduct. The petitioner took her that evening to Providence, returning at an early hour. There is no testimony that the relations between Celia Rose and the petitioner were illicit; nor was there any testimony showing improper behavior on the part of either of them while together. The conduct of the petitioner was indiscreet and doubtless was provocative at times of outbreaks of temper and jealousy on the part of his wife, but on the whole evidence the Court cannot find that his conduct was such as to bar a petition for divorce.

The evidence relied on by the petitioner does not show any physical violence, either exerted or threatened by the wife, except in the one instance when the petitioner testified that she threatened him with death.

From the testimony given by the petitioner, it appears that from a short time after they were married down to May 11, 1932, when he ceased to live with her, on one pretext or another the respondent used profane, abusive and indecent language toward him, often in the presence of the children and of friends, and at times in public places. She accused him of having infected her with syphilis, which she charged he had inherited from his parents, and also accused him of having murdered one of the children.

The petitioner was involved in an automobile accident in March, 1932. One of his children was killed and he was severely injured and was in the hospital the greater part of the month of April. On his return his wife upbraided him and accused him of having killed the child by design and of having been its murderer. This portion of the petitioner's testimony is not denied by the respondent. Affairs culminated on May 11, 1932, when the petitioner desired to take the children to a party at the home of his parents. The respondent refused to allow the children to go. She had not been invited on account of her physical condition. The petitioner testified that she cursed, used indecent language and threatened to kill him, and in this he is corroborated by the testimony of a friend who accompanied him to the party.

The respondent admitted that she swore on this occasion but denied the threat to kill. After this episode the petitioner left respondent and never thereafter lived with her.

The parties lived at Eden Park from November, 1930, to September, 1931. The house they occupied was next to the house in which the parents of the petitioner lived and was owned by Mr. LaCross, the father. Both parents testified for the petitioner but were studiously moderate in their testimony. The dissensions between the parties reached such a pitch that the peace of the neighborhood was disturbed and the father was obliged to ask the petitioner and respondent to vacate the house. Mrs. LaCross, the mother, heard the respondent frequently using profane, indecent and abusive language toward the petitioner and heard her charge the petitioner with being the murderer of his child. Mrs. LaCross ascribed the conduct of the respondent to jealousy in that she, the respondent, was not afforded the luxuries of life which the parents of the petitioner enjoyed.

The testimony given by the petitioner impressed the Court as being reliable on the essential points. The petitioner was frank and freely admitted matter which in some respects told against him. As pointed out, his testimony in important details is corroborated.

The respondent denied the allegations made by her husband except as before indicated. Her position was that no difficulties arose between the parties until 1930, after they were living at the house in Eden Park, and that the cause of the dissension was the petitioner's conduct with Celia Rose. Her testimony, when analyzed and read in connection with her demeanor on the stand, did not impress the Court as reliable. For example, in order to make out the claim of condonation, she testified positively that the fact that she was infected with a contagious disease made no difference in the relations between herself and the petitioner and that cohabitation took place between them during the period from November, 1931, to May, 1932. This testimony is incredible, particularly when taken into consideration with the medical testimony as to the

petitioner's condition in the fall of 1931 and the winter of 1932. The testimony of the respondent should be taken with extreme caution as against the evidence of the petitioner and his witnesses on the contested points.

Without rehearsing the testimony in greater detail, the Court finds that the respondent wilfully pursued a course of intemperate and abusive conduct toward the petitioner during the period that elapsed between the time the parties lived in San Diego and the time that he left the respondent in May, 1932.

In making this finding, the Court has eliminated from consideration the dissensions between the parties provoked by the Celia Rose affair.

The petitioner further testified that the conduct of the respondent made him sick and affected his nerves.

An important fact to be considered in this respect is that from December 1930 the petitioner was suffering from epilepsy. Dr. Brennan, who treated him for this disorder, testified that the course of conduct exhibited towards the petitioner by the respondent would have a tendency to aggravate the epileptic condition and make more frequent the seizures characteristic of this disease.

The Court finds that the conduct pursued by the respondent has injured the health of the petitioner and that it will be impossible for the petitioner to live further with the respondent without serious danger to his health. This finding is made without reference to the fact that the respondent has been, since November 1931, infected with syphilis.

The respondent sets up condonation as a defense on the ground that the parties cohabited up to the time petitioner left in May 1932. It is for the respondent to prove this defense. The Court finds that there was no cohabitation after November 1931. This defense therefore falls.

The respondent further testified that in June 1932, after the petition for divorce had been filed, the petitioner came to her home in East Greenwich and attempted a reconciliation. The petitioner denied this and stated that he went there on the instructions of counsel to obtain evidence to be used in the divorce proceedings. His intention was to interview neighbors and persons living in the same house as the respondent, on the second floor.

The Court finds that no such attempt at reconciliation took place.

Respecting the custody of the two children:

While the danger of infection from the respondent may not now be as great as formerly, yet the possibility still exists. In addition, the mother's financial condition is such that she is in the receipt of relief from the Town of East Greenwich. The father, the petitioner, is unable to work and has no property. The respondent's mother took the stand and stated that she would be willing to give assistance in the care of the children and their upbringing and stated that she had both real and personal property to a considerable amount. The children at present are in the custody of Mr. Thomas LaCross and Mrs. Celia LaCross, the father and mother of the petitioner. They are fully able to afford the children a proper home and such care and attention as children of their age require. The custody of the children is awarded to Thomas and Celia LaCross and the parties may be further heard on the question as to when and under what conditions the respondent may see her children.

Decision for petitioner on the ground of extreme cruelty.

For petitioner: J. G. Carroll.
For respondent: Walter Johnson.